| | |
|---|---|
| PEGGY POINDEXTER | 14TH JUDICIAL DISTRICT COURT |
| VS. NO. 2015-0341 Div. D | PARISH OF CALCASIEU |
| LOWE'S HOME CENTERS, LLC | STATE OF LOUISIANA |
| FILED: JAN 2 3 2015 | s/ Shellvie Lynne Hardy<br>DEPUTY CLERK OF COURT |

(Calcasieu Parish, LA — Clerk of Court stamp: 2015 JAN 23 AM 9:38)

### PETITION FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, **PEGGY POINDEXTER** (hereinafter, "Plaintiff"), a person of the full age of majority currently domiciled in Calcasieu Parish. The petition of Plaintiff is as follows:

1.

Made Defendant herein is **LOWE'S HOME CENTERS, LLC** (hereinafter, "Defendant"), a foreign limited liability company authorized to do business within the State of Louisiana, with agent for service of process being **CORPORATION SERVICE COMPANY**, who may be served at 320 Somerulos Street, Baton Rouge, LA 70802.

2.

On or about January 25, 2014 Plaintiff was a patron of the store own and/or operated by Defendant located in Lake Charles, Louisiana at 2800 Derek Drive.

3.

As Plaintiff approached the entrance to the subject store, she stepped and slipped upon ice located within the entrance area of the subject store.

4.

Plaintiff stepping upon the above-referenced ice caused Plaintiff to slip and fall.

5.

This ice located in front of the subject store created an unreasonably dangerous aisle or passageway within the control of Defendant and therefore this negligence is covered by the LSA-R.S. 9:2800.6 (hereinafter "the statute").

6.

This statute creates a legislative duty on a merchant to, "keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." Plaintiff alleges that Defendant breached this duty.

7.



EXHIBIT 1

On information and belief, Plaintiff alleges the following:

a. The condition of the subject store walking pathway presented an unreasonable risk of harm to the Plaintiff and that risk of harm was reasonably foreseeable;

b. Defendant had actual or constructive notice of the condition which caused the damage, prior to the Plaintiff's slip and fall; and

c. Defendant failed to exercise reasonable care.

8.

On information and belief, Defendant, was responsible for the cleaning, upkeep, and safety of the subject store. Defendant owed a duty to all patrons to maintain the pathways of the subject store in a safe condition. Defendant violated this duty to patrons by failing to clean, monitor, and/or maintain the pathways of the subject store to ensure that a reasonable patron would walk upon the subject store without suffering injury.

9.

Defendant did not place any signs or any other means of communication giving its patrons any warning of the aforementioned dangerous condition on its floor.

10.

As a result of the slip and fall, Plaintiff sustained severe personal injuries to her head, back, arm, and neck.

11.

As a result of the slip and fall, Plaintiff sustained serious damages, including, but not limited to the following:

a. Past, present, and future mental anguish;

b. Past, present, and future physical pain and suffering;

c. Past, present, and future medical expenses;

d. Loss of enjoyment of life; and

e. Other damages to be proven at the trial of this matter.

12.

The above incident was in no way attributable to Plaintiff and damages were caused solely and proximately by the fault and negligence of Defendant, which fault and neglect consisted of the following:

a. Failing to properly inspect the walking pathways of the subject store;

b. Failing to properly inspect the parking lot area of the subject store;

c. Failing to properly observe hazardous and/or dangerous conditions in the walking pathways of the subject store;

d. Failing to properly observe hazardous and/or dangerous conditions in the parking lot of the subject store;

e. Failing to properly train employees of the subject store;

f. Failing to properly monitor the subject store;

g. Failing to maintain proper attention;

h. Failing to see what it should have seen and do what it should have done;

i. Failing to exercise due care under the circumstances;

j. Failing to properly warn patrons of the existence of hazardous and/or dangerous conditions in the walking pathways of the subject store; and

k. Failing to properly warn patrons of the existence of hazardous and/or dangerous conditions of the parking lot of the subject store.

13.

The venue of this suit is proper, as the tortious/negligent behavior forming the basis of this suit occurred within the confines of the Parish of Calcasieu.

**WHEREFORE**, Plaintiff, **PEGGY POINDEXTER**, prays as follows:

1. **LOWE'S HOME CENTERS, LLC** is served with a copy of this petition and cited to appear and answer and, after the lapse of all legal delays and due proceedings are had, that there be judgment rendered in favor of Plaintiff and against Defendant and:

2. Plaintiff be awarded:

    a. All damages that are reasonable in the premises;

    b. Legal interest thereon from the date of judicial demand until paid;

    c. The cost of these proceedings; and

    d. All other relief to which Plaintiff is entitled by Louisiana's applicable statutes and jurisprudence.

Respectfully Submitted,

RICHARD LAW FIRM, LLC

_____
RONALD C. RICHARD (#24623)
900 Ryan Street, Suite 400
Lake Charles, Louisiana 70601
Telephone: (337) 494-1900
Facsimile: (337) 494-1793
EM: ron@richardlawfirm.com
Attorney for Plaintiff

E. JACOB COLONNA (#32110)
COLONNA LAW FIRM, LLC
One Lakeshore Drive, Suite 1800
Lake Charles, LA 70629
Tel: (337) 656-3212
Fax: (337) 385-5858
EM: colonnalawyer@gmail.com

**Please Serve:**

**LOWE'S HOME CENTERS, LLC**
Through its registered agent for service of process
**CORPORATION SERVICE COMPANY**
320 Somerulos Street
Baton Rouge, LA 70802

**A TRUE COPY**
Lake Charles, Louisiana

*Darnell Richmond*
Deputy Clerk of Court
Calcasieu Parish, Louisiana          JAN 2 8 2015

| | | |
|---|---|---|
| PEGGY POINDEXTER | : | 14TH JUDICIAL DISTRICT COURT |
| VS. 2015-341   Div D | : | PARISH OF CALCASIEU |
| LOWE'S HOME CENTERS, LLC | : | STATE OF LOUISIANA |
| FILED   JAN 2 3 2015 | : | s/ Shellvie Lynn Hardy<br>DEPUTY CLERK OF COURT |

## VERIFICATION OF PETITION

Before me, Notary Public, personally came and appeared PEGGY POINDEXTER, applicant herein, who, after being duly sworn did depose as follows:

I have read the allegations of the petition and they are true and accurate to the best of my knowledge, information, and belief.

_____
PEGGY POINDEXTER

Sworn to and subscribed before me this 21st day of January, 2015 at Lake Charles, Louisiana.

_____
NOTARY PUBLIC

# FILES & MEDICAL RECORDS

# RELATED TO

# LOWES PREMISES LIABILITY

**PEGGY SKINNER-POINDEXTER**
923 Chay Drive
Lake Charles, Louisiana 70611
pspoindexter@me.com
337-523-8176

Claim #30141666526-0001
Personal Injury Date: January 25, 2014
Claim Examiner: Jessica Williams



EXHIBIT 2

# ORDER OF RECORDS

**DEMAND LETTER**

**SECTION II - MEDICAL RECORDS**

DR. LILY RAMOS, M.D. – No. 1
TAD LANDRY, P.T./SWLA/EXCEL THERAPY GROUP – No. 2
DR. SETH BILLIODEAUX, M.D., MEMORIAL MEDICAL GROUP – No. 3
JASON ZERINGUE, P.T., MOSS BLUFF PHYSICAL THERAPY – No. 4
DR. GREGORY RUBINO, MD, FACS, NEUROSURGICAL INSTITUTE OF LAKE CHARLES – No. 5
MEDICAL DIAGNOSES MATRIX – No. 6

**SECTION III - ATTACHMENTS**

MEDICAL EXPENSE SUMMARY & INVOICES – No. 1
PROJECTED FUTURE MEDICAL TREATMENT – No. 2
LIFE EXPECTANCY CHART – No. 3
TEMPERATURE CALENDAR FOR JANUARY 24, 2014 – No. 4
MAP OF ICE ACCUMULATION IN LAKE CHARLES, LA, ON JANUARY 24, 2014 – No. 5
MAP OF SNOW ACCUMULATION IN LAKE CHARLES, LA, ON JANUARY 24, 2014 – No. 6

# DEMAND LETTER

Peggy Skinner-Poindexter
923 Chay Drive
Lake Charles, LA 70611

June 08, 2014

Jessica Williams
Claim Examiner
Lowes Companies Incorporated
Post Office Box 14072
Lexington, KY 40512-4072

RE:   Lowes Lake Charles, Louisiana (2800 Derrick Drive)
      Claimant: Peggy Skinner-Poindexter
      Claim No. 30141666526-0001
      Date of Loss: January 25, 2014

Dear Ms. Williams:

As you are aware based upon previous discussions, I was severely injured in a fall that occurred on January 25, 2014 at the Lowes in Lake Charles, LA. At the time of my fall, the local area was experiencing freezing temperatures and inclement weather.

I was visiting the Lowes store located at 2800 Derrick Drive, Lake Charles, LA to purchase a vase for my church. Unfortunately, as I attempted to enter the store, the walking surface leading into the entrance of the store was covered with ice. This unsafe condition resulted in me slipping and falling onto the hard concrete. As a result of that violent fall, I hit my head, back and arm. The extent of my injuries has been fully delineated and those injuries are documented within this correspondence. Formal statements from my attending physician, pain management specialist and neurosurgeon are enclosed for your review. Those statements reflect the medical diagnoses of my injuries and my prescribed long-term care strategy.

In regards to Premises Liability and in specific consideration for the weather conditions, Lowes failed miserably in their duty to exercise reasonable care in maintaining their entrance passageway in a satisfactorily safe state. Multiple safeguards could have been implemented to achieve and sustain safe conditions. Very unfortunately for me, there was obviously a failure to ensure a safe walking surface at the entrance of the store.

This is tangibly confirmed via the fact that Lowes failed to remove ice from the walking path during store hours. There was a failure to apply deicing agents to prevent or retard ice formation. Additionally, they failed to erect caution tape, post warning signage or prevent customer traffic from entering the dangerous area in which I fell. All of these blatant acts of negligence allowed an extremely unsafe and dangerous condition to develop and remain until I fell. This unsafe condition was not corrected until after I fell. In summation, Lowes is in direct violation of the Louisiana Merchant Liability Statute, La. R.S.9:2800.6

Due to the weather conditions during that time period, proper safety precautions should have been taken. Please note, based upon information ascertained from the National Weather Service Weather Forecast Office, January 24, 2014 was deemed a historical freezing event for the Lake Charles area. The temperature decreased to a record 25° F on that day.

Although my fall occurred on the following day, there was more than sufficient time to implement proper safety measures in response to the freezing temperatures the area experienced. Albeit the weather was severe, it was very accurately forecasted with precision. The populace of Calcasieu parish was adequately informed of the severe weather conditions and Lowes should have responded accordingly with specific emphasis on customer safety. More profoundly, my fall occurred near or around 2 p.m., approximately 7 hours after the store opened. Essentially, a full work day had elapsed without properly addressing the hazard at the store's entrance.

I concede my fall is difficult for me to describe because I had a momentary loss of consciousness. However, the store surveillance video should allow you an opportunity to see in actuality what a terrible fall I took on the ice covered concrete. Certainly the surveillance video is a much better descriptor of the actual event than a summary statement from myself.

However, to the best of my ability, I will try to describe the events related to my accident as accurately as possible. On January 25, 2014 at approximately 2:00 p.m., I was dressed in a jogging suit and sneakers walking toward the entrance doors of the Lake Charles Lowes store. My next coherent memory was of myself lying on the icy concrete being asked by several strange men if I was alright. I was disoriented and dizzy after the hard blow to my head, in addition to having a horrific headache. I could not get up without assistance because there was ice all around me and I struggled to find a part of the ground to grip that was not icy. The men lifted me up and brought me inside the doorway of the store which I estimate was about 8-10 steps in distance. Once inside the men called for a Lowes employee and told her that I had fallen on the ice and hit my head. The female employee immediately brought a store cart for me to sit on until Steven Barker, the Lowes Manager made it to the area. Approximately 3 minutes elapsed while I waited for Mr. Barker.

Mr. Barker then told me that he was calling for an ambulance and asked me which hospital I wanted to be transported to. I told him Lake Charles Memorial Hospital would be suitable. While we waited for the ambulance, Mr. Barker asked me where was the area that was covered in ice and as I told him, I pointed to the second brick column near the entrance door. Mr. Barker immediately called one of his male employees on his radio. He sent the employee outside to verify the presence of ice, and then he told him to rope that area off from the public and to get a shovel and break up the ice.

The Acadian Ambulance arrived and immediately placed a cervical collar around my neck, and monitored my vital signs. It was determined my blood pressure was extremely elevated as I was very nervous. As I was being taken to the ambulance, the male employee had placed yellow caution tape in the area where I fell and was chopping the ice with a shovel.

Upon arrival to the Lake Charles Memorial Hospital emergency room, they took computerized tomography (CT) scans of my head and spine. I was given Motrin for the excruciating headache and neck pain. I was prescribed Ibuprofen 600 mg, Methocarbamol 750 mg and Tramadol 50 mg after being checked by the Emergency Room doctor as no broken bones were identified. The ER doctor told the person with me to monitor me and to wake me periodically throughout the night because of the head

trauma, in addition, should I become nauseated to return to the ER. Otherwise, she said to schedule an appointment with my primary physician next week because injuries are not always identified in tests immediately after the trauma. I was given an excuse of no activity for a period of days.

That night and over the next few days, I suffered with headaches and was in excruciating neck and shoulder/upper back pain, despite still using the cervical collar. My body was stiff, sore and I could not sleep. Over the next few days temperatures dropped again to record lows, so I remained in bed while taking the emergency room prescription medications until on January 30, 2014.

Subsequently, I visited Dr. Lily Q. Ramos, M.D. my primary physician. By that time I was experiencing comprehensive body pain, bruised, very sore and stiff. Also, one of the medications prescribed to me at the emergency room caused an itchy rash on my face and neck. My right arm was hurting and my right hand was swollen with numbness and tingling in several fingers. Dr. Ramos gave me additional refills of the pain medication to address this. I was also given orders for cervical therapy with the SWLA/Xcel Therapy Group.  The therapy was completed with Tad Landry, Physical Therapist. **(Refer to Medical Record #1)**

During therapy, I complained about the pain in my right arm, elbow with numbness and tingling in my fingers.  Consequently, I scheduled a visit to Dr. Ramos and she took X-rays of them to confirm that nothing was fractured. After approximately 4-5 weeks of therapy, there was not improvement in my pain levels. I missed one week of therapy due to Jury Duty. Therefore, I returned to Dr. Ramos and she ordered a MRI of my neck and upper back.

At this junction in my treatment I was discharged from the care of Tad Landry, PT.  Mr. Landry provided a report which included the medical diagnoses and treating diagnoses.  **(Refer to Medical Record #2)**

Based upon the MRI results and my continuing neck/spine pain and heaviness, Dr. Ramos referred me to Dr. Gregory Rubino, MD, FACS (Neurosurgical Institute of Lake Charles).

Dr. Rubino prescribed Percocet 5/325 mg, Topomax 50 mg, and Zanaflex 4 mg in response to the headaches, ongoing pain in my neck, spine/upper back and shoulders.  He also ordered more specific therapeutic treatment such as transcutaneous electrical nerve stimulation (TENS), massage and cervical strengthening from Moss Bluff Physical Therapy (Jason Zeringue, PT) to help me with the neck/spine/upper back pain.

In addition to physical therapy, Dr. Rubino referred me to Dr. Seth Billiodeaux, MD of Interventional Pain Management. Dr. Billiodeaux examined me then he discussed my treatment options which included scheduling me for the *Cervical Epidural Steroid Injection*. I was reluctant to schedule the injection at that time, so he gave me a brochure regarding the procedure and told me to call the office when I was ready for the cervical injection. In the meantime, he prescribed and ordered *an Anti-Inflammatory Musculoskeletal Pain Cream (CMPD #1: Flurbiprofen 10%; Cyclobenzaprine 2%; Gabapentin 6%; Lidocaine 2%; Prilocaine 2%, in Lipoderm Active Max)* from Healthscript Specialty Pharmacy LLC, Sugar Land, TX. **(Refer to Medical Record #3)**

My therapeutic treatment ended on May 22, 2014. In addition to the therapeutic exercises conducted at the clinic, I was trained to perform certain therapeutic exercises in response to painful periods.  I found the exercises to be a useful pain management tool.  Mr. Zeringue also recommended as a means of

treatment, a home TENS Unit. Jason Zeringue, PT, has provided an evaluation and diagnosis of my condition. That record is attached for your review. **(Refer to Medical Record #4)**

My last appointment with Dr. Rubino was on May 23, 2014. He agreed with Mr. Zeringue, PT, and prescribed an Empi Select TENS Device for my home use, in addition to the home exercises and possibly adding swimming to assist in managing my long term pain. In addition, Dr. Rubino has stated my future medical needs in his medical report which is attached. **(Refer to Medical Record #5)**

Despite all of the therapeutic treatments, prescribed medications and specialty compound creams, I still have severe to moderate neck pain and heaviness. I still have shoulder pain that radiates down my arm and causes numbness and tingling in my fingers with less strength in my arm and hand than before the accident. At the onset of stiffness or pain, I either have to take Percocet or complete daily exercises given to me by my physical therapist. I have been forced to stay home from many events due to unbearable pain. As a Realtor, I am blessed to be able to set my own schedule however, some of the medication results in me being drowsy and incapable of operating my vehicle. This has hampered my job performance and opportunities to earn sales commissions.

Since 2012 I had been assisting my 79 year old mother with meals, showers and housekeeping. I was also very active in assisting with the upkeep of things at my church. Unfortunately, I have not been physically able to do so since my accident and I am not sure if I will ever get back to that point. This has been one of the most difficult periods of my life. The loss of enjoyment of life is immeasurable. I am hopeful that the long term treatment strategy will mitigate my injuries.

> ➢ My current medical expense for required treatment and prescribed medication thus far totals $32,051.23. **(Refer to Attachment 1)**
>
> ➢ My future medical expense, projected in accordance with my prescribed long-term treatment strategy totals, $209,242.77. **(Refer to Attachment 2)**

Therefore, I demand the sum of $965,926.00 in recompense for your gross negligence and my aforementioned injuries. Please provide me with a response within 14 days from your receipt of this correspondence.

Should you have any questions, please contact me at 337.523.8176 to further discuss this matter. I hope, therefore, for your prompt attention.

Sincerely,

Peggy Skinner-Poindexter
Claim #30141666526-0001

## Cindy Taylor

| | |
|---|---|
| From: | Ron Richard [ron@richardlawfirm.com] |
| Sent: | Thursday, April 09, 2015 5:15 PM |
| To: | Chris Caswell |
| Cc: | Toni Hebert; Clerk Richard Law; E. Jacob Colonna |
| Subject: | Poindexter vs Loews |

Chris,

Jacob will forward you the "settlement package" that Ms. Poindexter sent your adjuster. Please review.

I can recommend 100k in resolution. Please advise. Thanks.

Ron

Sent from Windows Mail



1